## FARM INVESTMENT COMPANY v. GAL-LUP ET AL.

MORTGAGE—FORECLOSURE—WATER AND WATER RIGHTS—DITCHES—CONVEYANCES—CONSTRUCTION OF DESCRIPTIVE WORDS IN MORTGAGE.

1. A sheriff's deed upon foreclosure can grant no greater interest than that conveyed by the mortgage.

2. An undivided one-half interest in an irrigating ditch having been acquired and used for the irrigation of two tracts of land, a deed conveying one of the tracts, "together with all appurtenances, water and irrigation rights and franchises, ditches and irrigation works belonging thereto," conveys only such an interest in the ditch as belonged or had become appurtenant to the tract conveyed.

3. A deed conveying a tract of land, "together with all appurtenances, water and irrigation rights and franchises, ditches and irrigation works belonging thereto," will not justify a decree quieting the title of the purchaser in the entire undivided one-half interest of the grantor in an irrigating

ditch used for the irrigation of the land, without proof that such entire interest belonged to or was appurtenant to the land, where it appears that it had been acquired and used to irrigate another tract as well as the tract conveyed.

4. A mortgage of a certain tract of land, "together with all my right, title and interest in and to the Snider Ditch No. 1, the same being used for and necessary to the irrigation of said lands," *Held* to include and convey so much only of the mortgagor's interest in the ditch as was used for, and was necessary to, the irrigation of the land described in the mortgage.

5. In determining what interest in the ditch passed by the mortgage, the instrument should be examined in the light of the facts concerning the acquirement of the mortgagor's interest, and the use thereof before and after the execution of the mortgage; it appearing that the mortgagor had an undivided one-half interest only acquired to irrigate other lands owned by him, as well as the land mortgaged, and which was used for that purpose both before and after the execution of the mortgage.

6. The words, "the same being used for and necessary to the irrigation of said lands," are to be construed as defining the interest or estate intended to be conveyed, and as limiting the interest conveyed to that which was used and necessary to the irrigation of the particular tract covered by the mortgage.

[Decided May 24, 1904.]                    (76 Pac., 917.)

ERROR to the District Court, Johnson County, HON. JOSEPH L. STOTTS, Judge.

The material facts are stated in the opinion.

*Alvin Bennett*, for plaintiff in error.

In taking its mortgage the plaintiff in error had a right to rely upon Section 1340, Revised Statutes of 1887, providing for the filing of statements of claims to water rights. It was under no obligation to look for other record as to ditch or water rights belonging to the land covered by its mortgage, and it had no other source of information. The mortgage from Snider to Bacon, under which the defendants in error Gallup claimed title, covered only so

much of the ditch in controversy as was necessary for use upon or appurtenant to the land conveyed. Such is the only construction possible to be placed upon the words in the mortgage describing the interest conveyed.

The defendants Gallup are entitled only to the rights possessed by their predecessor, Carpenter, and the latter conceded in her answer two cubic feet to the plaintiff for the land claimed by it, and the present defendants are bound thereby. (20 Ency. Pl. & Pr., 1061.) The defendants Gallup were not entitled to affirmative relief granted by the judgment, for they were not in possession of that portion of the ditch in controversy running through the land owned by the plaintiff; hence an action to quiet title to such portion of the ditch could not be maintained. (R. S., Sec. 4104.) The action was to quiet title of the plaintiff in and to its alleged water right, and the affirmative relief asked by the defendants was not germane to the relief sought by the plaintiff.

*Parmelee & Hill,* for defendants in error, Gallup, Gorgen and Fischer.

The county records respecting the particular tract of land owned by the plaintiff disclose nothing as to the ditch belonging to it, and the records respecting the ditch in controversy contain no description of the land irrigated from it. But, if true that the record of ditch statement would be notice of existing rights at the time when made, it cannot take precedence of the record of the subsequent transfer. The use of water on the land of plaintiff from the ditch in controversy is admitted, but the right to such use is denied by the answer of defendant. The occasional, spasmodic and permissive use of water through the ditch through no new appropriation, and too short of duration to ripen into a prescriptive right, falls short of the dignity of an admitted water right. Having parted with his right in the ditch, Snider and his successor, the plaintiff, had no means of conveying any water, which is essential to the

maintenance of a water right. (McPhail v. Forney, 4 Wyo., 556.) The description of the interest in the ditch conveyed by the mortgage under which the plaintiffs claim can only be construed as a sale and conveyance of the entire interest owned by the mortgagor, Snider, in the ditch described. No words are used which can be given a restrictive meaning. The statement with reference to the use of the ditch is to be understood as a statement of the mortgagor that all his interest in the ditch was necessary for the irrigation of the land described in the instrument.

The testimony fails to show that the ditch is capable of irrigating more than the land of defendant, and hence the position of plaintiff fails, for lack of proof, to show that it acquired any interest in the ditch. Moreover, the plaintiff being the claimant of a residuary interest by grant from Snider, the mortgagor, is in privity with him, bound by his deed, and is estopped, not only by the express grants, but by the recitals therein. (11 Ency. Law (2d Ed.), 400.)

The defendants Gallup are not bound by the answer of Mrs. Carpenter, whom they succeeded. While it is true that a substituted party usually takes the place of the original party, and that no new pleadings are necessary, still as an original party it would not be bound by admissions of a former answer on the filing of an amended one by leave of the court; so the defendants, having filed their own answer upon leave granted, are not bound by any former answer. If the mortgage from Snider to Bacon was admissible for any purpose, there was no error in admitting the same, even though the defendants might not be entitled to affirmative relief. A decree which quiets the use of water in the defendants, instead of the plaintiff, is clearly germane to the relief sought by the plaintiff. (Bartholemew v. Luth. Cong., 35 O. St., 567.) The court having acquired jurisdiction, will retain it to do full justice between the parties and prevent future litigation concerning the rights involved. There is nothing in the record which shows that the defendants were not in possession of

the entire interest in the ditch claimed by them, and nothing is to be presumed against the correctness of the judgment appealed from.

· The grant of a ditch carries · with it the water right without special mention. (Williams v. Harter (Cal.), 53 Pac., 406; McPhail v. Forney, 4 Wyo., 556.) A water right may be sold separate from the land. (Frank v. Hicks, 4 Wyo., 502; McPhail v. Forney, *supra.*) There is an entire failure of proof that the mortgagor's interest in the ditch carried any more water than was necessary for the irrigation of the land of defendants. It may be true that one appropriator, having a sufficient water right to irrigate all his land, and actually enjoying that privilege, cannot, as against subsequent appropriators, acquire a right to an additional amount of water for the same land; but it is conceivable that the owner of such franchise may with entire propriety purchase the right of an earlier appropriator and thus acquire a valuable privilege, and, though he might not receive a right to use any more water than he was originally entitled to, his priority would be advanced to a higher rank. But if it were a fact that the defendants or their grantors had a sufficient water right and were thereby prevented from having a title to the water of the mortgagor, it does not rest with the latter or his privies to deny the efficacy of the grant. A subsequent appropriator might urge such a matter, but not the grantor himself. (Ins. Co. v. Corey, ·31 N. E., 1095.)

Abandonment of a water right results from any unequivocal act of the claimant showing the intent to relinquish without the purpose of reclaiming. (Pomeroy Riparian Rights, Sec. 89; Long on Irr., Secs. 83, 86, 87; Smith v. O'Hara, 43 Cal., 371.) And there can be no more complete or positive proof of a relinquishment than a deed solemnly executed and acknowledged.

Potter, Justice.

This action was brought by the plaintiff in error in the District Court sitting in the County of Johnson for the

purpose of having its alleged right to the use of certain of the waters of French Creek quieted, and having said right adjudged superior and prior to the rights of the several defendants. · The original defendants were Mary L. Carpenter, Juliet H. Taylor, Verling K. Hart, Fred W. Foster, Alice S. Rapelyea, John A. Fischer, Robert Foote and Peter Gorgen. Previous to the trial Warren Gallup, James D. Gallup and Garret B. Gallup were substituted for Mary L. Carpenter, they having succeeded ·to her interest in the subject of the controversy.

Answers were filed by all the original defendants, with the exception of Alice S. Rapelyea, and, after their substitution, in the place of defendant Carpenter, the defendants Gallup filed a separate answer substantially similar to the answer of their predecessor in interest, but containing a prayer for affirmative relief. It appears that the appropriation to which they had succeeded and the appropriation claimed by the plaintiff were made by means of the same irrigating ditch and by the same party, one E. U. Snider, who formerly owned the lands claimed by the defendants Gallup and the plaintiff, respectively, and that whatever water right they had and have, so far as this suit is concerned, was acquired through Snider. And, claiming to have succeeded to the title of Snider in that ditch, the defendants Gallup prayed that the title thereto be quieted in them as against the plaintiff. The ditch had been constructed by Snider and others jointly, and it is admitted that he owned an undivided one-half interest in it. Snider had entered the land now owned by plaintiff under the desert land act, and the lands now owned by the Gallups as a· homestead, and ·had obtained a patent for both tracts, and, having separately mortgaged both tracts, and defaulted in the mortgages, the lands were sold upon foreclosure, and Mary L. Carpenter became the purchaser of the homestead tract, and the plaintiff of the other. Subsequently, and after the commencement of this suit, Mary L. Carpenter conveyed her premises to the Gallups. The

mortgage of the homestead had been executed to one Alfred Bacon in 1889, and that covering the land acquired under the desert land act to the plaintiff in 1891.

The cause was tried and there was a general finding for the defendants, but the court also found specially that the said Snider had, by his mortgage of the homestead to Bacon, conveyed to the latter all his interest in and to the ditch referred to, and that the defendants Warren Gallup, James D. Gallup and Garret B. Gallup were the owners of that interest and entitled to have their title quieted. Judgment was thereupon entered denying the relief demanded by the plaintiff, quieting the title of the defendants Gallup in the ditch and awarding them a judgment for their costs against the plaintiff, and it was ordered that the other defendants go hence without day and recover their costs from the plaintiff. That judgment is before this court for review on error.

The plaintiff's evidence was confined to a showing of the extent of the use which had been made of the ditch and the water conveyed therein in the irrigation of its land, evidently relying upon certain admissions and allegations of the answers to establish the other elements necessary to the proof of its alleged right. The petition alleges that on April 18, 1879, Elias U. Snider entered the land claimed by plaintiff under the desert land act, and immediately thereafter conveyed water thereon for the purpose of cultivating the same from a stream known as French Creek and its tributaries, and constructed a ditch from said creek to, upon and through the land, for the purpose of properly irrigating it, and became the one-half owner of the ditch called "Snider Ditch No. 1," having a capacity of eight cubic feet of water per second of time, and that the ditch was necessary in conveying water from said stream to and upon the land aforesaid. It is alleged that Snider was the first appropriator upon the stream, and that the water so appropriated had been necessarily, continuously and openly used without interruption in the irrigation of the land of plaintiff. It is

also alleged that the mortgage under which plaintiff acquired its title conveyed the land with all water rights for irrigating the same; and that the defendants assert adverse rights to the use of the water of said French Creek, thereby clouding the plaintiff's title to the use of the water appropriated for its land.

The separate answers of the several defendants admit that at or about the time stated in the petition the said Snider constructed Snider Ditch No. 1, for the purpose of irrigating the lands of plaintiff, but deny that the ditch was constructed or used exclusively for that purpose, averring on the contrary that the purpose was also the irrigation of other lands owned by certain of the defendants; and the defendants Taylor, Hart and Foster allege that the ditch was constructed jointly by Snider and one Verling K. Hart, deceased, the latter owning a one-half interest therein for the purpose of irrigating certain lands now owned by said last named defendants. It is further admitted by the answers that the plaintiff is the owner of the lands claimed by it in the petition, and of all the water rights pertaining thereto, if any, and that its title to such lands and water rights was derived from the said Snider. It is denied that the waters of French Creek were ever used upon plaintiff's lands to the extent of eight cubic feet per second, or in excess of two cubic feet. But the answer of defendants Gallup deny that such waters were so used in excess of *one* cubic foot. It is alleged in the answers that Snider was interested in two other irrigating ditches taking water from Clear Creek, from which the lands of plaintiff were chiefly irrigated, and that only a small portion of such lands were ever irrigated by water from French Creek, and that the extent to which such lands were irrigated with water from the last named stream did not exceed seventy acres as alleged by the defendants Gallup, or 140 acres as alleged by the other defendants. Neither of the defendants allege any abandonment of the use of the water upon plaintiff's land. Each defendant

sets up a right to a certain appropriation of the waters of French Creek for irrigation. The defendants Gallup allege the date of the appropriation for their land as March, 1879, anterior to the appropriation for the land of plaintiff, and the amount of this appropriation as 71-100 cubic foot per second, for the irrigation of fifty acres of land. The defendants Hart, Foster and Taylor allege their appropriation to have been made at or about the same time as that made for plaintiff's land, and the amount thereof as 93-100 cubic foot per second. The appropriations claimed by Fischer and Gorgen are alleged to have been made in 1883, and that claimed by Foote in 1884. The appropriations claimed by the plaintiff, the Gallups, and Hart and associates, were all inaugurated by the construction of the same ditch, viz: Snider Ditch No. 1, and the conveyance of the water therein to and upon the lands owned by them respectively. The claim of priority asserted by the defendants Gallup over the appropriation originally acquired for the lands of plaintiff is founded upon the alleged fact that their land is situated nearer the headgate of the ditch and was, therefore, first reached by the water thereby diverted. We fail, however, to discover in the evidence any proof as to the order in which the water was applied upon the respective tracts. It is clear that the Gallup land is located above that of plaintiff, but it appears that both tracts at the time of the construction of the ditch and for an indefinite period thereafter formed part of what is called in the evidence "the Snider ranch." Whether, in the absence of a showing of a contrary intention, the priority as between the two tracts would depend upon the order in which the water was applied to them respectively, the same ditch having been constructed for the purpose of irrigating both tracts, it is unnecessary to determine at this time, and we do not decide that question. We observe that the Board of Control, in adjudicating the rights upon the stream, awarded to Hart and associates, the owners of one-half of the ditch, and to Mary L. Carpenter, who had become the owner of the

Snider homestead, an equal priority as to time, viz:  Priority No. 1.  It does not appear that the plaintiff was a party to that adjudication, and this suit is doubtless brought to determine its priority in view of the fact that its right had not been adjudicated in the statutory proceeding before the board.  (Farm Investment Co. v. Carpenter, 9 Wyo., 110.)  The allegations in the answer of the defendants Gallup to the effect that their appropriation was prior to that of plaintiff were denied by the reply, and it is evident that whatever might otherwise have been the relative rights of those defendants and the plaintiff, the former relied to establish their defense as well as their right to affirmative relief upon the conveyances under which they derive title to their premises.  They asserted by their answer, and the trial court apparently adopted that theory, that the Snider mortgage of the homestead conveyed his entire interest in the ditch, and that Mary L. Carpenter, by her purchase at foreclosure sale, succeeded to that interest, and, by her subsequent deed, conveyed the same to the defendants Gallup.  We think the record discloses that to have been the sole theory upon which the case was decided, since the plaintiff was denied any appropriation, although there was testimony to show that before and after Snider conveyed the lands, and including the year previous to the trial, the lands of plaintiff were irrigated to some extent by water taken from the ditch in question.

It is true that the defendants showed that the water carried upon plaintiff's land through the ditch was chiefly Clear Creek water, which in some unexplained manner was taken into French Creek and from there flowed into Snider Ditch No. 1.  One witness gives as the reason therefor that most of the water naturally flowing in French Creek was taken out by persons further up the stream.  The tendency of the evidence, however, is to show that French Creek naturally supplies only a small quantity of water.  But it does not sufficiently appear that none of the waters of French Creek were carried upon the land of plaintiff, to

justify an affirmance of the judgment on that ground alone. The testimony is to the effect that the water with which the land was irrigated was chiefly Clear Creek water; but we do not understand that it disproves the use or appropriation of any water from French Creek, though it warrants the inference that but a small quantity of such water has been so used, at least in later years. But there is no finding as to the quantity, nor as to the number of acres of land irrigated therewith.

Now, it is clear that whatever the extent of plaintiff's right on French Creek, if it had any right at all, it is superior to that of the defendants not taking water from the so-called Snider Ditch, since their answers show subsequent appropriations, and admit the appropriation of plaintiff's grantor, and the continued use of the water on plaintiff's land to a limited extent. And the other defendants, all of whom use the Snider Ditch, make similar admissions in their pleadings, while alleging priority of right as against the plaintiff; but to establish that priority they introduced in evidence and relied upon certain conveyances deemed sufficient to vest in certain of the defendants all the interest that Snider originally possessed in the ditch through which the appropriation for plaintiff's land was acquired, and hence sufficient to deprive the plaintiff of any ditch or conduit for conveying the water upon its land, and to render it incapable of asserting a water right, upon the principle announced by this court in McPhail v. Forney (4 Wyo., 556), that it is necessary to the creation and preservation of a water right to provide means for the continual diversion of the water from its natural channel, and that a party cannot arbitrarily seize and use another's ditch, or interest in a ditch, for that purpose.

It becomes important, therefore, to consider the effect of such conveyances. The mortgage executed by Snider upon his homestead, following the description of the land, contained these words: "together with all my right, title and interest in and to the Snider Ditch No. 1, the same

being used for and necessary to the irrigation of said lands, and appears of record in the office of the County Clerk and ex-officio Register of Deeds in and for Johnson County in Book 'A' of Miscellaneous Records on page 614." The record referred to, is not in evidence, but the one evidently intended is the ditch statement required to be filed under the statute enacted in 1886. The sheriff's deed on foreclosure to Mary L. Carpenter conveys with the land, "Snider Ditch No. 1, and all the water rights and franchises of the mortgagors of whatever nature, to water used for the irrigation of said land." Of course, no greater interest than that conveyed by the mortgage could have been granted by the deed of the sheriff. The deed from Mary L. Carpenter conveys to Warren Gallup, Garret B. Gallup and James D. Gallup, the same land, "together with all appurtenances, water and irrigation rights and franchises, ditches and irrigation works belonging thereto."

It is to be observed that the deed from Carpenter to Gallup makes no specific reference to Snider Ditch No. 1, nor any other ditch by name. There is no attempt by that deed, judged by its terms, to dispose of or convey any particular interest in the ditch disassociated from its character as an appurtenant or belonging to the land conveyed. To bring all of Snider's original one-half interest in the ditch within the operation of that deed, it is plainly essential that it be shown that it had become an appurtenant to the land, or belonged to it—that it was all acquired and held as necessary or at least as convenient to the proper diversion and use of the water appropriated for that particular tract. Yet there is no averment or proof to the effect that Snider's entire interest in the ditch was ever exclusively used or was necessary for the irrigation of the homestead. On the contrary, it appears that his interest was acquired and used for the purpose of conveying water to the lands embraced within both his homestead and desert land entry. In the answer of defendants Gallup, the present owners of the homestead, it is alleged: "that at the

time of the construction of the said Snider Ditch No. 1, the said Elias U. Snider was the occupant and claimant by virtue of a homestead filing of the north half of the north half of Section 26, in Township 51 north, of Range 82 west, containing 160 acres; that said Elias U. Snider was the owner of an undivided one-half interest in said Snider Ditch No. 1, and that the said ditch was constructed and used for the purpose of irrigating said last named tract of land, *in connection with that now owned by the plaintiff*, and the land of one Verling K. Hart, who was a half owner in said ditch." Without proof, therefore, of sufficient facts to show that Snider's half interest in its entirety belonged or was appurtenant to the homestead, exclusive of any other land, when the deed to the defendants Gallup was executed and delivered, the finding of the trial court that they had become the owners of an undivided one-half interest in the ditch would clearly seem to be unsupported, whatever may have been acquired by their grantor. The precise location of the ditch is not disclosed, but it is doubtless safe to say that it is not all constructed upon the tract known as the homestead; and certainly some showing would be required to justify the conclusion that the part of the ditch beyond the homestead was appurtenant to it. Although the capacity of the ditch is not clearly stated, the record fails to show that a half interest is required to properly carry the water appropriated for the homestead, but an inference to the contrary seems to be authorized, if any.

The above considerations compel us inevitably to hold that it was error, upon the facts in the case, to quiet the title of the defendants Warren, Garret B. and James Gallup to an undivided one-half interest in the ditch. While the defendants failed to show themselves entitled to affirmative relief, the question remains whether the plaintiff established an existing water right. The court found that it had not; and that finding was evidently based upon the theory that by the mortgage to Bacon of the homestead premises Snider conveyed his entire right and interest in

the ditch, so that the plaintiff acquired none under the mortgage to which it succeeded. The correctness of that finding is challenged: We will restate the material language of the mortgage: "together with all my right, title and interest in and to the Snider Ditch No. 1, the same being used for and necessary to the irrigation of said lands, and appears of record," &c. Defendants contend that these terms cover all interest and title that Snider had in the ditch, but on the part of plaintiff it is insisted that only so much of his interest was conveyed as was in fact used for and necessary to the irrigation of the lands described.

The mortgage itself does not define the extent of the grantor's interest, nor the character of his title, and, from all that appears in that instrument, he might have been the sole owner. Upon extrinsic inquiry, however, it is learned that his right was limited to an undivided one-half interest, which was acquired by joining in the original construction of the ditch. That fact is admitted by the parties, but it is further admitted that the ditch was constructed for the purpose of irrigating both tracts of the mortgagor's land— that now owned by plaintiff and defendants Gallup, respectively, and that such purpose was actually consummated; that both before and after the execution of the mortgage the mortgagor used the ditch for conveying water upon the land of plaintiff, as well as that of defendants, and that it continued to be so used after the passing of his title in the lands to other parties. The instrument should be examined in the light of these facts. (Frank v. Hicks, 4 Wyo., 502.) In view of the descriptive words following the mention of the ditch, we regard it as significant that the mortgage does not in explicit terms convey an undivided one-half interest. Had the reference to the grantor's right, title and interest in the mentioned ditch been followed by such words, without more, as the following: "the same being an undivided one-half interest," there would be little difficulty in understanding the intention, in the absence of extrinsic circumstances. Such words would be clearly descriptive of the thing con-

veyed. We think the words which do follow are to be regarded likewise as descriptive, and that, as conceded by counsel, the words "the same" refer to the antecedent expression, "all my right, title and interest." If we substitute for "the same" the words referred to, the descriptive sentence would read: "all my right, title and interest being used for and necessary to the irrigation of said lands," and the entire clause would read: "together with all my right, title and interest in and to the Snider Ditch No. 1, being used for and necessary to the irrigation of said lands." Reading the disputed clause in that way, and bearing the facts in mind, we think it cannot be held that an undivided one-half interest in the ditch was conveyed or intended to be conveyed, unless such interest was all necessary to and was used for the irrigation of the mortgaged premises.

It is to be remembered that the instrument was a mortgage, and, until 1893, the mortgagor retained possession of both tracts, apparently enjoying them as part of one ranch or farm; and that to some extent the ditch and its connected water right had become appurtenant to the land subsequently coming into the possession of plaintiff. (Frank v. Hicks, *supra*.) The clause in the mortgage referring to the ditch discloses a purpose to carry with the land described an appurtenant water right, rather than a specific property independent of or additional to the land, or something which was an appurtenance to other lands. The descriptive words are to be construed as defining with greater particularity the interest or estate intended to be conveyed. The sense in which the words "the same being" were employed will, we think, be better understood by transposing them so as to read, "being the same," whereby the true intention would appear to be expressed, and the interest to be conveyed clearly defined as that which was being used and necessary in irrigating the land. It is argued that the reference to the use and necessity of the ditch property or interest amounts to a statement by the grantor that all of his property in the ditch was used and was necessary for

such irrigation. Such a statement, however, would seem to disagree with the admitted facts, and hence we would hardly feel authorized in accepting that view of counsel. But the argument proves too much, since it concedes an intention to convey only such water right as had become connected with the mortgaged land; and, moreover, we think the more reasonable interpretation of the qualifying words is that they are not so much a recital of facts or conditions, as explanatory or descriptive of the property antecedently mentioned. Upon a careful consideration of the terms of the mortgage in connection with the facts and circumstances existing at the time of its execution, we are, therefore, constrained to hold that so much only of the Snider interest in the ditch was included in the property covered by the Bacon mortgage as was "used for and necessary to the irrigation of" the land therein described.

Finally it is contended that the plaintiff was properly denied any relief on the ground that there was a failure on its part to prove that there would be a residue of the Snider half interest in the ditch beyond that required for the water right appropriated for the land described in the mortgage. It is true that the evidence is not very specific on that point. But it is admitted by the pleadings that the ditch was built in the first place for the purpose of appropriating water for the land of plaintiff, and that water was thereby applied to that land; and the allegation of the petition that such appropriation was continuously and openly used is denied only to the extent that not more than one cubic foot was so used, and not to exceed seventy acres were irrigated from French Creek. The evidence, while not very definite respecting the number of acres irrigated from the last named stream, or the quantity of water continuously used, does tend to show a use of the ditch in various years, although the larger proportion of the water conveyed through it upon plaintiff's premises seems to have been drawn from Clear Creek after it had been diverted into French Creek. There is no explanation of the manner in which the waters

of Clear Creek were appropriated, or the time when such an appropriation, if any, was made; but there is a clear tendency in the evidence to show that the waters of that stream were drawn from French Creek into the ditch in question and applied to plaintiff's land. We are in the dark as to whether the ditch constituted a part of the means by which an appropriation was made from Clear Creek. If it did, then there would appear to be an additional reason for holding that Snider did not intend to convey by the Bacon mortgage all his interest in the ditch, since the water appropriation for the land therein described was made from French Creek only, so far as the record discloses. Again, the evidence does not disprove that the waters of French Creek to some extent at least were used by plaintiff. It may be conceded that such use is shown to a very limited extent; but if it was so limited because subsequent appropriators on the stream above the headgate of Snider Ditch diverted the water, as indicated by one of the witnesses, that fact should not operate to deprive plaintiff of a prior valid right. It is evident, however, that this particular question did not enter into the consideration of the District Court; and that the theory upon which judgment was pronounced was that plaintiff's grantor had previously by the mortgage aforesaid conveyed away all his interest in the canal through which plaintiff's land was irrigated from French Creek, irrespective of the interest required for the proper irrigation of the land embraced in the mortgage. As we have been led to differently interpret the terms and effect of the mortgage, the case should be remanded for new trial; and if there is any ground for the contention of defendants that their appropriation in fact ante-dates that made for the land of plaintiff, and that none of the waters of French Creek remain for plaintiff, the matter should first be considered and determined in the trial court.

For the seasons set forth, the judgment will be reversed, and the cause remanded for new trial.     *Reversed.*

CORN, C. J., and KNIGHT, J., concur.