# HOLLIDAY v. TEMPLIN

(No. 2152; June 18, 1940; 103 Pac. (2d) 408)

For the appellant, there was a brief by *Bard Ferrall* and *John S. Miller* of Cheyenne, and oral argument by *Mr. Ferrall.*

For the respondent, there was a brief and oral argument by *J. A. Greenwood* of Cheyenne.

BLUME, Justice.

The plaintiff, Clarence Holliday, brought this action against the defendant, Curtis Templin, to quiet his title to an undivided one-half interest in a ditch and water right which was acquired by one Frank A. Meanea on February 20, 1890, from one Marcus W. Mason. Judgment was rendered in favor of the plaintiff, and the defendant has appealed. The parties will hereinafter

be referred to as in the case below. The facts are little, if any, in dispute.

Frank A. Meanea made desert land entry on a section of land, namely, the S/2 of the N/2 and the S/2 of Section 22, and the N/2 of the N/2 of Section 27, T. 20 N., R. 61 W., on February 23, 1887. He made proof in compliance with law at the land office at Cheyenne on February 21, 1890, and patent to the land was issued to him subsequently on October 2, 1891. It is agreed by the parties herein that the water right used on the land is the right under the Lowe Cattle Company's No. 1 ditch, hereinafter mentioned. Plaintiff and defendant both derive their title to the land from Meanea, each owning 320 acres thereof, the plaintiff owning the west half and the defendant the east half. The land will hereinafter be referred to by these or similar terms. Only the water and ditch right in connection therewith is in dispute.

The water right herein involves 15.8 cu. ft. p. s. t. from Horse Creek. A claim for this water was filed by the Lowe Cattle Company in the office of the county clerk of Laramie County on August 24, 1886, to be conducted through its ditch No. 1. The right of the Lowe Cattle Company was sold under execution and a sheriff's deed therefor was issued to Marcus W. Mason on May 7, 1889. Thereafter, on June 12, 1889, in an adjudication of the waters of Horse Creek, the district court of Laramie County confirmed the right in Mason, granting him a water right of 15.8 cu. ft. p. s. t. through the ditch above mentioned from Horse Creek to irrigate 640 acres of land (not describing the land), the right to have a priority as of May 10, 1884. On February 20, 1890, Mason conveyed to Meanea an undivided one-half interest in the foregoing ditch and water right. The conveyance did not describe any land upon which it was to be used. The consideration was $3200. Soon after, namely, on May 6, 1890, Meanea conveyed the west

half of the foregoing lands to Mason, "together with the privileges, hereditaments, tenaments and appurtenances thereunto in any way appertaining and belonging." The consideration for that, too, was $3200. The title to the east half of the foregoing land remained in Meanea until February 26, 1907, when he conveyed it to Howard W. Thomas, a predecessor in interest to the defendant, together with "an undivided one-half interest in and to that certain irrigation ditch known and called Lowe Cattle Company's Ditch No. 1, and also an undivided one-half interest in and to all water appropriated by said Lowe Cattle Company by means of said ditch."

In the trial of the case the court excluded some testimony offered for the purpose of showing the specific amount of water which was used on the east half of the land here in question, commencing with 1891. We need not, however, consider whether the action of the trial court in this respect was correct or not, since the facts are clear. It is agreed by the parties that the ditch in question has a carrying capacity of 15.8 cubic feet of water. The witness Frank L. Jones testified that, commencing with 1891 to 1897, the water in question here, namely, 15.8 cu. ft. p. s. t., was divided equally between the two tracts of land here involved, one-half thereof being used on the east half and one-half on the west half. The witness Banta testified to this equal division on the two tracts from 1912 to 1933. The witness Donahue, who became water commissioner in 1916, testified to this equal division from 1916 to the date of the trial of this case. The plaintiff became the owner of the west half of the land here in question in 1933, and in 1935 he wrote a letter to Donahue, Water Commissioner, claiming that he was the owner of three-fourths of the ditch and water right here in question, and asked the division of the water in accordance therewith. The defendant Templin became the owner of the east half

of the land in 1928. He paid as a consideration the sum of $14,000, made careful inquiries of neighbors as to the extent of water right connected with the land, consulted the State Engineer and an attorney at law, who assured him that the land purchased by him had a water right of 7.9 cu. ft. p. s. t., together with a half interest in Lowe Company's Ditch No. 1, being one-half of the total water and ditch right formerly owned by Mason. And it is his contention that he owns this right and that the plaintiff is the owner of the other half interest and no more.

The law applicable in this case is comparatively simple. But the facts, particularly since lacunae are left in the evidence, are apt to leave the mind in confusion, unless every circumstance is borne in mind and closely analyzed. Plaintiff did not introduce in evidence the conveyance of the west half of the land from Mason to his successor in interest, or any of the intervening conveyances of the land, including the one to him in 1933. So, doubtless, none of these conveyances contained any description of a water or ditch right as large as that claimed herein by the plaintiff. We should have been interested in having these conveyances shown in evidence, but inasmuch as the defendant did not introduce them, we conjecture that they contain nothing of help to him. Notwithstanding the fact that plaintiff has failed to show any definite chain of title to his water or ditch right, and though he owns only half of the original desert land entry, he claims three-fourths of the total water and ditch right above mentioned. It appears, as above noted, that Mason was the record owner of this total right prior to February 20, 1890. On that day he conveyed a half-interest therein to Meanea. It is the contention of counsel for plaintiff that the half-interest, and no more, which Meanea thus acquired became appurtenant to the whole of the desert entry of 640 acres of land; that when he conveyed

one-half of this land to Mason he conveyed one-half of his interest in the water and ditch right which he had previously acquired, thus leaving only one-half thereof, or one-fourth of the whole, in Meanea for the benefit of the east half of the land which Meanea retained and which now belongs to defendant. Counsel for plaintiff thinks that this makes a clear case, and there might be some basis for it if the premises which he assumes were all true. This is an equity case. In view of the harsh results to the defendant if the judgment herein should be sustained, and in view of the fact that defendant's land has enjoyed the use of one-half of the foregoing water and ditch right for nearly half a century, we cannot indulge in any presumptions in plaintiff's favor unless absolutely required. He must recover upon the strength of his own title. The burden to show that title is upon him. Simmons v. Ramsbottom, 51 Wyo. 419, 68 P. (2d) 153; Davis v. Convention, 45 Wyo. 148, 16 P. (2d) 48. And in view of the circumstances in this case the evidence should be clear. Plaintiff himself, in his letter to the water commissioner, and on the witness stand, claimed three-fourths of the whole of the water and ditch right involved in this case. This would include the one-half interest which Mason retained therein on February 20, 1890, when he conveyed the other half to Meanea. Counsel for plaintiff argues that his client acquired but a one-fourth interest directly, namely, by reason of the conveyance of one-half of the land from Meanea to Mason and the right appurtenant thereto; that plaintiff, however, has a later water right with a priority of 1906; that it is important that defendant's right be limited to the amount shown by the record, so that plaintiff may use three-fourths of the water, one-fourth under his conveyance of the west half of the land in question and one-half thereof in connection with his later water right. This argument implies that in some way or other

the half interest which Mason retained on February 20, 1890, has been lost, so that it becomes available to the party who has an appropriation of later date. To explain this loss he suggests that it was used on land other than the desert entry of 640 acres. But there is no evidence to that effect. He refers to the fact that the statement of the claim of the right by the Lowe Cattle Company shows that 1100 acres were to be irrigated thereby. But that does not show that this was done. As a matter of fact, the decree of the court adjudicating the right in favor of Mason, dated July 12, 1889, limited the right to 640 acres. Why 640? In view of the fact that Mason, in less than a year thereafter, became the owner of one-half of the land here involved, it is not a violent conjecture that the desert land entry above mentioned was contemplated. Why did Mason retain a one-half interest in the ditch and water right? Counsel for plaintiff sensed the importance of the solution of that question when he attempted to find an explanation as to what became of that right. But his explanation is inadequate. There is no evidence of nonuser or abandonment of that right. It does not appear that Mason ever owned any other land than what he acquired from Meanea on May 6, 1890. There are indications, as hereinafter mentioned, that at least part of his right was used on the 640 acres. And in this connection we have, perhaps, the right to consider the long use of this right on the west half of the land, commencing at least with the year 1891. In view of these facts, the theory that the right which Mason retained on February 20, 1890, was lost, is hardly adequate. Plaintiff was probably right when he claimed the ownership of this right directly, instead of indirectly as does his counsel. It was probably conveyed by Mason to the predecessors in interest of plaintiff as appurtenant to plaintiff's land. And if that is correct, and plaintiff also owns the additional one-fourth interest by reason

of Mason's acquisition thereof from Meanea, then Mason must have intended to use nearly 12 cu. ft. of water p. s. t. on 320 acres of land which he obtained from Meanea. But that is not likely. That amount of water would, according to the present statutory rule, irrigate over 800 acres of land. Nor is there any evidence to show that that much water was at any time used on that land. These facts would seem to indicate at least a doubt that this one-fourth interest in dispute became appurtenant to the west half of the land here involved.

The burden to show that this interest became appurtenant to plaintiff's land is on him. McPhail v. Forney, 4 Wyo. 556, 560; Farm Investment Co. v. Gallup, 13 Wyo. 20, 31; Long on Irrigation (2nd ed.) Sec. 169. It is stated in 67 C. J. 1098 that "a water privilege not before attached to land may be made an appurtenance to it by a separate grant when it is to be used in connection therewith, and when such is the intention of the parties." In the absence of such conveyance, the rule stated in Wiel, Water Rights (3rd ed.) Sec. 551, would seem to apply, ordinarily at least, namely, that "a water right or ditch right is appurtenant only to such lands of a large tract as had been actually irrigated from it." A grant of such right may at times be implied in connection with a grant of land, when such right is necessary thereto. That point will be considered later in this opinion, and we shall, at present, confine our attention to the effect of the conveyance of the water and ditch right by Mason to Meanea on February 20, 1890. That conveyance does not describe any land upon which the right was to be used. Hence it is not, in itself, sufficient to show the use or intended use thereof. And there is no direct evidence that this right was ever used or intended to be used on plaintiff's land. Whatever evidence there is must rest upon a possible inference hereinafter mentioned. The evidence as to

the use from 1891 and subsequent years is clear—the right was used only on the east half of the land. There is no evidence as to the use in 1890. But since Mason obtained the west half of the land on May 6, 1890, probably before the irrigation season, and he, Mason, still had a half interest in the total right, we have, we think, no right to presume that the half interest in the total right conveyed to Meanea was used on the west half. So we need but to inquire as to the use in 1889. Whatever basis there is for claiming that the right conveyed to Meanea was used on plaintiff's land during that time rests on an inference arising from the following facts: Meanea, in filing for a desert land entry, was required to file a declaration to the effect that he intended "to reclaim a tract of land not exceeding one section by conducting water upon the same within three years thereafter," according to section 321 of 43 U. S. C. A., as the law then read. It is not altogether clear that the law as it stood in 1887 to 1890 contemplated that the whole tract was to be irrigated. See United States v. McIntosh, 85 Fed. 333. In 1891 the law was amended, requiring the reclamation of only one-eighth of the entry. Section 328, 43 U. S. C. A. Counsel for plaintiff evidently assumes that the whole tract was to be irrigated, and for the purposes of this case, we may do the same. Meanea was required to submit his proof that he had complied with the law within three years from February 23, 1887, and presumably he did so, since patent was issued to him, so that the irrigation of the land took place at least in 1889. The court, over the objection of defendant, excluded the final proofs in that connection. Plaintiff offered these proofs, and, in order that we may have all the light we can obtain, and in order that no injustice may be done to plaintiff, we think we should consider them, for they are in the record before us. It is shown thereby that the final proof was made on February 21, 1890. Meanea stated

therein that he had acquired an interest in a water and ditch right, and probably referred to the conveyance of such right from Mason to him, dated February 20, 1890. It may be that this statement should be construed as a representation, that the whole 640 acres of land was irrigated by the right acquired under that conveyance, and by that alone. But even if that was in fact a misrepresentation, it would have been entirely harmless, if, in fact, a greater right was used on, belonged to, or was intended to belong to the land. Moreover, the actual facts should govern. The instrument of conveyance just mentioned is dated February 20, 1890. The land, accordingly, cannot have been irrigated in 1889 by the right acquired thereunder, and thereunder alone, as counsel for plaintiff seems to contend. A water right acquired only in 1890 could not be a water right which was used in 1889. Hence, if Meanea irrigated the land with the water of Mason, and that seems to be agreed, he must have obtained the right to do so— and we shall not presume that he had no right—pursuant to an agreement, perhaps oral, with Mason, made at least as early as 1889. And if we may infer such agreement, then, since the terms thereof are not shown, why limit it, as counsel for plaintiff would have us do, namely, that all of the land actually was and should be irrigated with only half of the total water and ditch right here in question? Some light is thrown on this point by the witnesses used by Meanea when he made final proof of his desert land entry. Their evidence shows that Meanea had water sufficient to irrigate the whole tract and *plenty of it,* as one witness stated, and *more than* sufficient, as stated by another witness. These statements would probably be incorrect if only 7.9 cu. ft. p. s. t. were used on the 640 acres of land, in view of the statutory rule of one cubic foot of water p. s. t. for 70 acres of land, and if we bear in mind that the court adjudicated 15.8 cu. ft. p. s. t. for that much

land. This testimony gives at least a hint that more than one-half of the total right was used on the land, and, since it is not shown that any of it was used on any other land, the inference is possible that all of the right of which Mason was then the record-owner was used on the land at that time, giving rise to the inference that that was true also in 1890. If that is correct, then there is but a weak basis, if any, for the claim that the half interest of the water and ditch right acquired by Meanea from Mason, and only that, was intended to become and actually became appurtenant to the whole 640 acres of land here in question. But even if there is a flaw in the foregoing argument, it shows at least that no clear inference contrary to that here stated can be drawn from the facts in the case.

It is not difficult to divine the truth of the situation. Mason owned a water right of 15.8 cu. ft. p. s. t. and a ditch right appertaining thereto. Meanea had 640 acres of land. Neither of the rights was of value without the other. Hence Mason and Meanea agreed to share the rights, each conveying one-half of his right to the other. The circumstances in the case, taken as a whole, agree, and agree only, with that theory, so that while we cannot base our conclusion upon a certainty, we can base it at least upon probability, and in the absence of certainty, that is all which the law attempts to do. If the respective conveyances heretofore mentioned, of the water right to Meanea and of the land to Mason, had been made on the same day, the theory above mentioned would rise to the dignity of certainty. It is only because the water right was conveyed to Meanea on February 20, 1890, and the land was conveyed to Mason a little later, namely, on May 6, 1890, that the theory can be said to rest only upon probability. But even that circumstance is easily explained. Both conveyances recite that the consideration is the sum of $3200. That, in view of the other

facts in the case, is a strong circumstance showing that the foregoing theory is correct. The water was conveyed to Meanea on February 20, 1890, because he was then making his proof of his desert land entry and he needed title to a water right. The land was not then conveyed to Mason because Meanea had not yet acquired any title to his land, and we think we may take judicial notice of the fact that customarily no conveyances were made of land by the person making proof thereof until final proof had been made or final receipt had been issued. According to the foregoing theory, then, one-half of the whole water right was intended to become appurtenant to the east half of the land, which was retained by Meanea, leaving the other one-half of the water and ditch right to become appurtenant to the west half of the land. The retention of one-half interest in the ditch and water right by Mason on February 20, 1890, finds its explanation in that fact and in that fact only, and is a circumstance of no little importance. The subsequent equal division of the water for the two tracts of land is not only consistent with the foregoing theory, but it is not consistent with any other. The evidence shows that from 1891 to 1897 the water was equally divided between the two tracts of land. The record does not show the situation from 1897 to 1912, but the inference arises that the previous condition continued. 2 2 C. J. 86. The evidence is clear that from 1912 to 1935, when the plaintiff claimed three-fourths of the water and ditch right, the equal division continued. Thus for 44 or 45 years there was a clear recognition that the east half of the land, namely, defendant's, was entitled to 7.9 cu. ft. of water p. s. t. It was a practical construction of the meaning of the transactions of Mason and of Meanea and of their intention when they made their respective conveyances. There is no indication in the record that the use of one-half of the water on the east half was merely

permissive. It is held that where the parties to a contract have given a practical construction thereto by their conduct, such construction is entitled to great if not controlling weight. 13 C. J. 564; 17 C. J. S. 325. Here the practical construction was in part only by the successors in interest of the original parties, but we can see no reason why the fundamental principle underlying the rule just stated should not be applied here. The deed from Meanea to Mason did not contain any specific reference to any ditch or water right. That, too, is fully consistent with the theory above mentioned. The supposition of plaintiff that the deed carried with it one-half of the water right which had previously been conveyed to Meanea is gratuitous. The intention of the parties as indicated by the terms of the instrument construed in the light of the surrounding circumstances controls. Farm Investment Co. v. Gallup, supra; 67 C. J. 1098; Kinney, Irrigation (2nd ed.) 699, 1790, 1793. All the surrounding circumstances in this case negative the supposition of plaintiff. The deed, as already stated, did not describe any water or ditch right. Kinney on Irrigation (2nd ed.) p. 1793 (and see Farm Investment Co. v. Gallup, supra) states that the burden of proof in such case is upon the one claiming that these rights passed with the transfer of the land. But the claimant need only prove, first, that the grantor at the time of the transfer was the owner of the rights claimed, and second, that they were necessary to the full enjoyment of the land conveyed. Assuming that to be the correct rule, there is no showing in this case of the necessity here mentioned. Mason still held a one-half interest in the whole of his water and ditch right, and that, in the absence of evidence to the contrary, must be held amply sufficient for the land which he acquired from Meanea. Under the present statutory rule it would irrigate much more than the 320 acres which he acquired. If part of the right con-

veyed by Mason to Meanea was necessary for the west half of the land, it could have been only from February 20, 1890, to May 6, 1890. But as that period is not, ordinarily at least, within the irrigation season, we can hardly be asked to give it much consideration. The deed from Meanea to Howard W. Thomas, the predecessor in interest of plaintiff, in 1907, contains a specific conveyance of the one-half of the ditch and water right here in dispute. We need not go so far as to hold that this is inconsistent with any right of the plaintiff, so as to come into opposition with the rule that the declarations of a grantor are not admissible against a grantee after he parts with his title. All we need to say is that it is perfectly consistent with the theory above mentioned. In fact, under this theory, all doubtful matters become clear. The question of a lost right disappears. An assumption that three-fourths of the right was used on plaintiff's land vanishes. There is not a single fact in the case, so far as the record shows, which is inconsistent with this theory. And as in physical science, a theory, reasonable and not self-contradictory, rises to the dignity of a probability when all the known facts agree with it (Jevons, Principles of Science, p. 511), so the same must be said to be true in the case at bar.

The judgment of the trial court is reversed, with direction to enter judgment in favor of the defendant.

*Reversed, with direction.*

RINER, Ch. J., and KIMBALL, J., concur.