WYOMING ABSTRACT AND TITLE COMPANY,
a Corporation,

*Plaintiff and Respondent,*

vs.

O. D. WALLICK,

*Defendant and Appellant.*

(No. 2391; August 3, 1948; 196 Pac. (2nd) 384)

C. A. Swainson and John C. Pickett, both of Cheyenne, for appellant.

No appearance for plaintiff and respondent.

For defendant and appellant the cause was submitted on the brief and oral argument of C. A. Swainson and John C. Pickett both of Cheyenne, Wyoming.

## OPINION

RINER, Chief Justice.

The district court of Laramie County rendered a judgment in favor of Wyoming Abstract and Title Company, a Corporation, plaintiff in that court and respondent here, against O. D. Wallick, one of the defendants in that court, and the sole appellant and who brings the record in the case to us for review by direct appeal. The other parties made defendants below were by the same judgment dismissed from the case.

The action was one brought by the plaintiff aforesaid which for convenience will be usually so referred to or occasionally as "Abstract Company" and against the defendant, O. D. Wallick and O. D. Wallick & L. H. Buenger, doing business under the firm name and style of Wallick & Buenger. O. D. Wallick will be mentioned hereinafter either as the defendant or by his surname only. The action sought to recover damages for the alleged breach of an oral contract for supplying by the abstract company to Wallick certain abstracts of title to property owned by him in Capitol Heights Addition to the City of Cheyenne.

Plaintiff's petition after setting out certain allegations descriptive of the parties involved, stated in substance that on or about August 1, 1939 the defendants

had become possessed of a large number of city lots in the Capitol Heights Addition to the City of Cheyenne above mentioned and that the defendants by Wallick on or about said date employed plaintiff to make up for them abstracts of title to said lots, said abstracts to number between three hundred and three hundred fifty. The detailed terms of the contract of employment were set out in said pleading thus:

"That by the terms of said contract the plaintiff was to make said abstracts to said date as fast as plaintiff could make the same; that the defendants would sell lots to public buyers or otherwise dispose of said lots as fast as they could do so that as soon as a lot was sold or abstract asked for the defendants would take delivery of one of said abstracts as completed by plaintiff as hereinbefore stated and in addition thereto defendants would have plaintiff complete the abstract to said lot with any and all new entries covering said lot from said completed date to the actual date of said sale or other disposal of the same.

"That by the terms of said employment of plaintiff by the defendants the defendants agreed that as they sold or otherwise disposed of one of said lots they would pay the plaintiff the sum of Ten dollars ($10.00) in cash for each of said abstracts made to the said time of employment and in addition thereto would pay the plaintiff the regular abstracting fees on any and all new entries from said completed date to the actual date of said sale."

Damages were claimed by plaintiff's pleading due to the defendant's failure to "order, accept delivery, and pay for" the abstracts pursuant to the alleged contract which as before stated, was an oral one.

The defendants filed separate answers consisting for the most part of general denials of the allegations of plaintiff's petition and the answer of Wallick asserted that the plaintiff quoted a price of ten dollars per abstract; that he bought fifty-one abstracts from the

abstract company, paid for them in full and is not indebted to plaintiff "in any sum whatsoever". A reply was filed by the plaintiff putting in issue the new matter set out in Wallick's answer and the case went to trial before the court without a jury and culminated in the judgment hereinbefore mentioned.

The testimony of the parties was in some respects contradictory but in disposing of the case we shall briefly review that given on behalf of the plaintiff by its executive officer and who made the alleged agreement with the defendant, Wallick, upon which this action is based and also that submitted by the defendant which was uncontroverted. See Dulaney vs. Jensen, 63 Wyo. 313, 181 Pac. 2d 605 and cases therein cited.

In the first place it is undisputed that the transaction covered by plaintiff's petition was a personal one by Wallick only with the abstract company and the partnership of Wallick and Buenger had no concern therewith. Accordingly the court's action in dismissing the firm aforesaid from the case was proper and no one is here complaining of that ruling. It is undisputed also that Wallick on August 1, 1939 acquired two hundred thirty-six lots in Capitol Heights Addition to the City of Cheyenne and that he received a deed for them from A. E. Wilde, receiver of the Equitable Savings and Loan and Home Building and Loan Association; that later Wallick obtained ten more lots in the Capitol Heights Addition aforesaid securing these through three separate conveyances from the receiver aforesaid, the last one being dated March 18, 1940; that from these two hundred forty-six lots owned by him, he had sold between August 1, 1939 and the commencement of this action, one hundred three lots leaving unsold one hundred forty-three lots; that upon the sales of those lots he purchased from the plaintiff fifty-eight abstracts of title to same duly completed with proper ex-

tensions and paid plaintiff for them; and that on July 1, 1939 the abstract company submitted a written bid to "Wallick & Buenger Realty Company" reading:

"We hereby submit our bid of $10.00 each for abstracts covering Capitol Heights Addition to the City of Cheyenne, Laramie County Wyoming.

Yours very truly,

Wyoming Abstract & Title Company

MEM:aw        (Signed) By M. Elizabeth Miller"

Concerning the negotiations of the parties in this matter and the terms of the alleged contract between the plaintiff and the defendant Wallick, Mrs. Miller, the Secretary-Treasurer and manager of the plaintiff and who represented the plaintiff at all times in this transaction, testified on direct examination in substance that Wallick told her he thought he would need three hundred fifty abstracts; that this conversation occurred July 1, 1939; that the ten dollar bid quoted above covered abstracts in the Capitol Heights Addition complete to July 1, 1939 but not beyond that date; that Wallick agreed to give the plaintiff all the continuations on the abstracts so that he would be allowed a cheaper price; that it was not possible to make abstracts to Capitol Heights Addition property until the lot and block number were furnished plaintiff; that Wallick was to take delivery of these abstracts each time he gave the plaintiff a description, i. e., within a few days thereafter; that the first abstract delivered to Wallick was on August 14, 1939, the bill therefor being in the sum of $12.90 and that this bill was ultimately paid; that the price range of the abstracts that plaintiff completed and Wallick paid it for was from ten dollars to fifteen dollars and nineteen dollars respectively. On cross examination the same witness stated that at first the plaintiff charged one dollar an entry for extensions

of the abstracts beyond the date of July 1, 1939; that on November 19, 1940 it was agreed that on certain abstracts requiring extensions, the price would be fifteen dollars, and on others nineteen dollars when they were brought down to date at the time same were furnished to Wallick; that plaintiff never charged the latter more than nineteen dollars for any abstract after that date; that the agreement of Wallick with the plaintiff was: He was to pay the latter a certain amount for these abstracts as he sold the lots; that plaintiff was not to be paid for the abstracts until he asked for them and they were to be ready then; that after September, 1941 Wallick procured no more abstracts from the plaintiff and the witness had never seen him since that date; that after September, 1941 the price of extensions of these abstracts would have run higher and that the plaintiff could not have delivered the completed abstracts for fifteen or nineteen dollars without loss to it; that the entries from July 1, 1939 onward would have been higher in price.

The defendant, Wallick, stated on cross examination that on July 1, 1939 he did not know how many abstracts he would need.

It seems to be quite well established in the law of contracts that, as stated in 2 C. J. S., 755-757, Section 325: "Where the parties to a contract have given it a practical construction by their conduct, as by acts in partial performance, such construction may be considered by the court in construing the contract, determining its meaning, and ascertaining the mutual intention of the parties at the time of contracting; it is entitled to great, if not controlling, weight in determining the proper interpretation of the contract; and it will generally be adopted by the court."

This court has recognized this principle by saying in Holliday vs. Templin, 56 Wyo. 94, 103 Pac. 2d 408 that: "It is held that where the parties to a contract have

given a practical construction thereto by their conduct, such construction is entitled to great if not controlling weight."

And also in the earlier case of First National Bank of Green River vs. Ennis, 44 Wyo. 497, 14 Pac. 2d 201 where several other still earlier Wyoming cases to the same effect are cited. In the Ennis case it was said:

"It is a familiar principle of law that the contemporary construction of a contract by acts of the parties is entitled to serious consideration by the court whose duty it becomes to determine its meaning."

Keeping in mind the plaintiff's pleadings, the undisputed facts as well as the testimony above set forth and the rules to be applied in the interpretation of contracts where the parties have themselves partially performed under them and thereby supplied their own practical construction thereof, it would reasonably appear that Wallick agreed to purchase certain abstracts of title from the plaintiff for the lots he held in the Capitol Heights Addition to the City of Cheyenne; that these abstracts were to be delivered only when Wallick was able to sell the lots and requested the abstracts, giving plaintiff the designation of lot and block so that proper extensions from July 1, 1939 could be made; that they were not to be paid for until the request and designation was made; that the completed abstracts were not to cost more than nineteen dollars for each; that the charge for these abstracts to be made by plaintiff to Wallick without any extensions beyond July 1, 1939 would be ten dollars; that the first extensions of the abstract were to be paid for at the rate of one dollar per entry but that in November, 1940 the parties agreed upon a change of this price resulting in increasing the cost to Wallick of the abstracts of from fifteen to nineteen dollars for each one depending upon the number and length of necessary extensions for each one; and

that after September 1941 Wallick ordered no more abstracts from the plaintiff.

Under these circumstances it would seem that after October 1, 1941 to the commencement of this action in the district court there remained only forty-five abstracts which were not ordered and paid for by the defendant, Wallick, which he should have taken under the agreement of the parties. Wallick had at that time ordered and paid for some fifty-eight abstracts; he had sold one hundred three lots only in the Capitol Heights Addition altogether at the time this action was tried. Plaintiff's damages should therefore be computed thus: Forty-five abstracts at the price of ten dollars for each one to July 1, 1939 would be the sum of $450. To this amount ordinarily should be added the price of making the extensions of each of these forty-five abstracts, less the cost to plaintiff for supplying them, but according to the testimony of plaintiff's manager as we understand it, this cost would exceed any such profit and the only result would be a loss to the plaintiff. In order for the plaintiff to obtain a profit on the extensions of these abstracts it would seem to have been necessary for the parties to have made a new contract, which, of course, they did not do. That being so, the judgment of the district court should be modified by reducing the amount thereof from $2,920 to $450.

The trial court appears to have arrived at the amount it awarded plaintiff by allowing the latter ten dollars for each of three hundred fifty abstracts less ten dollars paid by the defendant Wallick to plaintiff for each of the fifty-eight abstracts delivered to him. This computation would appear to overlook the effect of the testimony and undisputed facts in the case recited above and obliges him to pay for abstracts for lots which he neither owned or sold and which he might never own or sell.

The judgment of the district court of Laramie County will accordingly be modified as hereinbefore indicated and as thus modified will be affirmed.

*Modified and Affirmed.*

KIMBALL, J., and BLUME, J., concur.