SUNBURST EXPLORATION, INC., a corporation, Appellant (Defendant),

v.

John JENSEN, J. Wallace Jensen, Alma J. Hintze, Hugh J. Hintze, Beth H. Beck, Lehi J. Hintze, and Marion H. Monson, Appellees (Plaintiffs).

No. 5513.

Supreme Court of Wyoming.

Nov. 9, 1981.

Joseph E. Vlastos, of Vlastos, Reeves & Murdock, Casper, signed the brief and appeared in oral argument on behalf of appellant.

Houston G. Williams, of Williams, Porter, Day & Neville, P.C., Casper, signed the brief and appeared in oral argument on behalf of appellees.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY, and BROWN, JJ.

ROONEY, Justice.

Appellant-defendant appeals from a summary judgment which determined the rights of the parties under an agreement between their predecessors in interest, specifically determining that the overriding royalty interest now to be paid under the agreement by appellant to appellees is in the amount of 10 percent (5 percent plus 5 percent) and not 2½ percent (1¼ percent plus 1¼ percent).

We affirm.

The agreement was an assignment of a prospecting permit dated May 15, 1936 held by appellees' predecessor in interest from the United States and covering described lands in Carbon County. The portion of the clause in the agreement pertinent to the issues here presented (hereinafter referred to as the "royalty reservation") provides:

"* * * reserving certain overriding royalties to the first parties, viz., five (5%) per cent to F. F. Hintze and five (5%) per cent to N. H. Jensen of the production from lands on which the Government royalty shall be five (5%) per cent, or less, known as the primary or preferred lands, and a royalty of one and one-fourth (1¼%) per cent to F. F. Hintze and a royalty of one and one-fourth (1¼%) per cent to N. H. Jensen of the production of lands on which the Government royalty is more than five (5%) per cent, known as secondary or non-preferential lands. * * *"

Hintze and Jensen are appellees' predecessors in interest.

Production was obtained on the "primary or preferred lands," and the prospecting permit relative thereto became United States Oil and Gas Lease Wyoming Serial No. 029234–A. The prospecting permit and the lease provided for a 5 percent government royalty on the lands in question. The government lease was dated October 7, 1937 and was

"* * * for a period of twenty (20) years, with the preferential right in the lessee to renew this lease for successive periods of ten (10) years, upon such reasonable terms and conditions as may be pre-scribed by the lessor, unless otherwise provided by law at the time of the expiration of such periods."

The preferential right to renew was exercised twice: On June 1, 1958, and on June 1, 1968. The renewal leases were on printed forms which recited the government royalty to be 12½ percent or more.

Appellant's predecessors in interest paid an overriding royalty to appellees and their predecessors in interest in the amount of 10 percent (5 percent plus 5 percent), but appellant attempted to pay it in the amount of 2½ percent (1¼ percent plus 1¼ percent) when it acquired the interest in the lease. Appellees then instituted this action. Both parties moved for a summary judgment. Appellant's motion was denied, and appellees' motion was granted.

■ Appellant contends that the royalty reservation in the assignment is clear and unambiguous in mandating a decrease in overriding royalty from 10 percent (5 percent plus 5 percent) to 2½ percent (1¼ percent plus 1¼ percent) when the government royalty increased to 12½ percent, i. e., when the first option was exercised. Therefore, appellant asserts evidence of continued payments of 10 percent by its predecessors in interest, and evidence of negotiations between it and its immediate predecessor in interest [1] in an effort to determine intent of the parties should not have been considered by the trial court. Further, appellant contends that consideration of such evidence should not result in the conclusion that appellant is bound thereby to continue the payment of the higher percent in overriding royalties. Appellees contend that such evidence estops appellant from claiming the overriding royalty to be other than 10 percent.

We recently outlined the general law relative to ambiguous contracts:

"Our basic purpose in construing or interpreting a contract is to determine the intention and understanding of the parties. [Citations.] If the contract is in

1. Appellant's immediate predecessor in interest, Phillips Petroleum Company, advised appellant by letter dated September 20, 1973 that it would accept appellant's offer to purchase the working interest in the lease, reciting among other things that:

"The interest of Phillips is subject to a 10% overriding royalty interest * * *."

Appellant's response reflected that it agreed:

"* * * to accept the property subject to the contractual overriding royalty interests of record."

The assignment filed with the government on the government's printed form recited:

"What overriding royalties or production payments, if any, were previously reserved or conveyed? (Percentage only)
*10%*"

writing and the language is clear and unambiguous, the intention is to be secured from the words of the contract. [Citations.] And the contract as a whole should be considered, with each part being read in light of all other parts. [Citations.] The interpretation and construction is done by the court as a matter of law. [Citations.]

"If the contract is ambiguous, resort may be had to extrinsic evidence. [Citations.] An ambiguous contract 'is an agreement which is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present.' [Citation.] Ambiguity justifying extraneous evidence is not generated by the subsequent disagreement of the parties concerning its meaning. [Citation.]" *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463, 465 (1980).

The royalty reservation in the assignment is ambiguous. Its meaning is obscure because a double meaning is present. The expression is not definite as to that intended. It could be read to reserve an overriding royalty of 10 percent (5 percent plus 5 percent) when the government royalty is 5 percent or less, and 2½ percent (1¼ percent plus 1¼ percent) when the government royalty exceeds 5 percent. However it could be read to reserve an overriding royalty of 10 percent (5 percent plus 5 percent) from the "primary or preferred lands," and 2½ percent (1¼ percent plus 1¼ percent) from the "secondary or non-preferential lands." The two potential readings make a double meaning.

In looking beyond the language of the instrument to ascertain the intent of the parties *at the time the language was used*, we note that the law under which the permit which was being assigned by the instrument provided in part:

"That upon establishing to the satisfaction of the Secretary of the Interior that valuable deposits of oil or gas have been discovered within the limits of the land embraced in any permit, the permittee shall be entitled to a lease for one-fourth of the land embraced in the prospecting permit: * * * Such leases shall be for a term of twenty years upon a royalty of 5 per centum in amount or value of the production * * *. The permittee shall also be entitled to a preference right to a lease for the remainder of the land in his prospecting permit at a royalty of not less that 12½ per centum in amount or value of the production, * * *." Section 14, 41 Stat. 442 (1920).

The foregoing language is from a rather lengthy enactment which specified the manner in which a permit was to be issued, and the manner of marking the exterior boundaries of the permit lands. It provided for the means for others to obtain leases on the remaining three-fourths of the land area embraced in the permit in event the original permittee did not exercise his preferential right to a lease thereon. The application of a 5 percent government royalty on the one-fourth area (primary area) and 12½ percent on the three-fourths area (secondary area) is reflected in the above quoted portion of the act.

With this law in mind at the time the lease was made, it would seem that the parties were concerned with reserving the overriding royalty upon *the basis of the land involved*, described as primary and preferential or secondary and non-preferential. The reference to the percent of government royalty was to describe such land. The land subject to the assignment is all within the one-fourth area (primary or preferential land) under the permit. The language of the royalty reservation clause of the assignment is supportive of this interpretation inasmuch as the noun upon which the descriptive clause operates is the word "lands." With the emphasis placed in light of the governing statute, the royalty reservation clause would read in pertinent part:

" * * * reserving certain overriding royalties * * * five (5%) per cent * * * and five (5%) per cent * * * of the *production from lands* on which the Government royalty shall be five (5%) per cent, or less,

*known as the primary or preferred lands,* and a royalty of one and one-fourth (1¼%) per cent * * * and * * * one and one-fourth (1¼%) per cent * * * *of the production of lands* on which the Government royalty is more than five (5%) per cent, *known as secondary or non-preferential lands.*" (Emphasis added.)

The contrary interpretation urged by appellant would make the use of the words "known as the primary or preferred lands" and "known as secondary or non-preferential lands" meaningless and superfluous. An instrument must be construed as a whole with meaning afforded to all of the language used, if that can be done and a reasonable construction achieved. *Northern Gas Company v. Town of Sinclair*, Wyo., 592 P.2d 1138 (1979). All the parts and every word in a contract should, if possible, be given effect. *Shepard v. Top Hat Land & Cattle Co.*, Wyo., 560 P.2d 730 (1977). A construction rendering a provision meaningless should be avoided because it is presumed that a particular provision is placed there for a purpose. *Rossi v. Percifield*, Wyo., 527 P.2d 819 (1974).

The parties to the assignment have recognized the 10 percent (5 percent plus 5 percent) overriding royalty interest since the exercise of the first option in 1958. Such is entitled to great weight in determination of the intent of the parties.

"A familiar principle in the law of contracts pertinent just here has been thus stated by this court in *Rohrbaugh v. Mokler*, 26 Wyo. 514, 188 P. 448, 450: 'It is well settled that, if the meaning of a contract or instrument is doubtful on its face, the practical construction put upon it by the parties should have great weight in determining its proper construction. * * * This is especially true where the parties have for a long time acquiesced in, and acted in good faith upon, such practical construction.'" *In Re Utah-Idaho Sugar Co.*, 57 Wyo. 425, 120 P.2d 601, 607 (1942). See *Holliday v. Templin*, 56 Wyo. 94, 103 P.2d 408 (1940); *Wyoming Abstract & Title Co. v. Wallick*, 64 Wyo. 458, 196 P.2d 384 (1948); and *P & M Cattle Company v. Holler*, Wyo., 559 P.2d 1019 (1977).

Appellant argues that the estate reserved in the royalty reservation clause was a definite property interest, and that subsequent actions of the parties inconsistent with such interest could not change the reserved property interest. This argument is premised on the assumption that the reserved estate was unambiguous as to quantity. As already indicated, this premise is improper. Because of the ambiguity, a determination is necessary to establish the intent of the parties and thus the quantity of the estate reserved. *Balch v. Arnold*, 9 Wyo. 17, 59 P. 434 (1899); *In Re Rennie's Estate*, 430 F.2d 1388 (10th Cir. 1970); *Forbes v. Volk*, Wyo., 358 P.2d 942 (1961); *Dawson v. Meike*, Wyo., 508 P.2d 15 (1973); *Holland v. Windsor*, Wyo., 461 P.2d 47 (1969); *First National Bank and Trust Company v. Finkbiner*, Wyo., 416 P.2d 224 (1966).

Inasmuch as the royalty reservation clause is ambiguous, the intention of the parties is controlling. Such intention was to reserve an overriding royalty of 10 per cent (5 percent plus 5 percent).

Affirmed.

THOMAS, Justice, concurring specially, with whom ROSE, Chief Justice, joins.

I concur in the result of the majority opinion in this instance. It is my position, however, that it is not necessary to justify that result as a matter of construction of an ambiguous contract. I would support judgment of the trial court on the basis of the language of the clause reserving the overriding royalty on behalf of the appellee's predecessors in interest. The agreement, when read in context, provides for a five per cent overriding royalty to F. F. Hintze; and a five per cent overriding royalty to N. H. Jensen "of the production from lands on which the Government royalty shall be five

(5%) per cent or less, known as the primary or preferred lands," and then provides for a lesser royalty on other lands. Since no discovery then had been made, it was not possible to describe the five per cent lands with greater specificity. Nevertheless, these words were only words of description designed to designate the lands on which the total of ten per cent royalty would be paid. The contract is in writing and the language is sufficiently clear and unambig-uous that the intention of the parties can be secured from the words of the contract. *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463 (1980).