ASHLAND OIL COMPANY, a foreign corporation and Partnership Properties Co., a Colorado General Partnership, Appellants (Defendants),

v.

Elizabeth F. JAEGER, Jeffrey L. Jaeger, John F. Jaeger, William P. Jaeger, III, David C. Brunk, James D. Brunk, Jr., P. Curtis Brunk, T. Randall Brunk, and William Franklin Brunk, Appellees (Plaintiffs).

No. 5673.

Supreme Court of Wyoming.

Aug. 20, 1982.

Rehearing Denied Sept. 1, 1982.

William F. Drew and David G. Lewis of Brown, Drew, Apostolos, Massey & Sullivan, Casper, for appellants.

William T. Schwartz and Richard R. Wilking of Schwartz, Bon, McCrary & Walker, Casper, for appellees.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROSE, Chief Justice.

This action was brought by the appellees (sometimes referred to as the Jaegers, lessors or royalty owners) to recover from appellants (sometimes referred to as lessees or Ashland) ad valorem and severance taxes assessed against oil and gas production. Appellants paid all taxes and then deducted from Jaegers' overriding royalty payments the amount paid on their behalf. Appellees Jaeger also sought declaratory relief from the district court asking that Ashland be directed to pay to Jaeger their full overriding royalty interest without first deducting the overriding royalty owner's share of the severance taxes and the ad valorem taxes assessed against production.

At the appropriate time, the parties entered into original and amended stipulations of fact, and thereafter both appellees Jaegers and appellants Ashland filed motions for summary judgment. The court heard arguments, and granted appellees' motion while denying Ashland's motion. Judgment was entered accordingly on February 16, 1982.

We will reverse.

## STIPULATED FACTS

The base lease out of which this dispute arises has been identified as "United States Oil and Gas Lease Cheyenne 044141," which lease was assigned on June 29, 1918 by

Jaegers' predecessor in interest (Polar Oil Company) to Ashland's predecessor in interest (Empire State Oil Company). Polar Oil Company reserved a 5% overriding royalty interest. On May 5, 1949, Polar assigned this 5% overriding royalty interest to Curtis, Incorporated. This assignment of overriding royalty is the document which the court found to be the operative instrument in this lawsuit. The only signatory party to the assignment of royalty is Polar Oil Company, as assignor. Appellants Ashland and Partnership Properties Company, and their predecessors in interest, are neither party nor privy to that assignment of royalty. On January 28, 1971, Curtis, Incorporated assigned its 5% overriding royalty interest to the present owners, the appellees in this litigation.

Empire State Oil Company had operated the lease until August 1, 1972 when it assigned the lease to appellant Ashland Oil Company. After this litigation was commenced, Ashland assigned the lease to Petro Lewis Corporation which in turn assigned it to appellant Partnership Properties Company.

Ashland's predecessor in interest had paid on behalf of the Jaegers' royalty interest owners and their predecessors, all of the ad valorem taxes assessed against the production of the oil and gas attributed to Jaegers' 5% overriding royalty interest and had also paid the severance taxes on these overriding royalty interests. The severance tax had come into existence immediately prior to the time when Ashland Oil Company acquired this lease. The stipulation reveals that Ashland's predecessors had paid the ad valorem taxes on behalf of the overriding royalty interest owners, and the stipulation also shows that Ashland had mistakenly paid Jaegers' ad valorem taxes for the years 1973 and 1974 and their severance taxes for the years 1973, 1974 and 1975. Upon the discovery of this fact Ashland deducted, from Jaegers' production payments, those taxes which it had paid on Jaegers' proportionate share of production from 1973 through 1975. Ashland and Partnership Properties Company have, to the date of the judgment, continued to deduct those amounts paid by it to the state of Wyoming as ad valorem and severance taxes on behalf of the Jaegers' interests.

Soon after appellant Ashland acquired the lease, it caused the formation of the Hamilton Dome Subthrust Phosphoria Unit Area, which included a portion of the production from Cheyenne Lease 044141. Paragraph 32 of the Unit Agreement, entitled "Royalty Owners' Taxes," provides:

"Unless otherwise specifically provided by law, each Royalty Owner shall render and pay all ad valorem taxes, including ad valorem taxes measured by production levied against its Royalty Interest. Unit Operator shall pay, as an agent for the Working Interest Owners, each Royalty Owner's share of all taxes other than ad valorem taxes levied on or measured by the Unitized Substances in and under, or that may be produced, gathered, and sold from the lands subject hereto, or upon the proceeds or net proceeds derived therefrom, and shall pay ad valorem taxes to the extent that the same are made payable by law or by any Working Interest Owner. Each Working Interest Owner shall reimburse Unit Operator for taxes so paid on its behalf and such Working Interest Owner shall make proportionate deductions of said amounts in settling with its Royalty Owners in each separately owned Tract. No taxes shall be charged to the United States or to any lessor who has a contract with his lessee which requires the lessee to pay such taxes."

The Unit Agreement only applies to production from the Phosphoria Subthrust Formation located within the unitized area. Appellees Jaeger executed and ratified the Unit Agreement on August 18, 1972.

## APPELLANTS' POSITION

Given these facts, Ashland argues that the district judge erred in granting Jaegers' motion for summary judgment because the record fails to reveal a contract requiring Ashland to pay ad valorem and severance taxes on behalf of Jaegers—the royalty

owners. Ashland says that in the absence of an agreement to the contrary, our decision in *Miller v. Buck Creek Oil Co.*, 38 Wyo. 505, 269 P. 43 (1928), is applicable and controlling. We said in *Miller v. Buck Creek Oil Co.* that, in the absence of a contract, the royalty owner is liable for payment of the ad valorem taxes equal on his or her proportionate share of production and that the lessee can properly deduct the same from any payments if it can be shown that the lessee had paid the taxes on the royalty owner's behalf. Appellant Ashland further contends that § 39–6–304(h), W.S. 1977, Cum.Supp.1982,[1] permits a deduction for any severance tax paid by them on the appellees' behalf.

## APPELLEES' POSITION

Appellees Jaegers, on the other hand, argue that the district judge properly granted summary judgment because the record reflects that Ashland's predecessor in interest, Empire State Oil, paid the taxes without deducting them from the royalty payments and that Ashland continued this practice for three years so that the past conduct of the parties structures an agreement to the effect that the lessee of Cheyenne Lease 044141 is required to transmit all royalty payments free and clear of ad valorem and severance taxes. Under such circumstances, it is argued that, since past conduct creates a contract, *Miller v. Buck Creek Oil Co.*, supra, and the provisions of § 39–6–304(h), supra n.1, do not operate to the detriment of Jaegers.

## THE ISSUE

After a review of the parties' contentions, the issue presented by this appeal can be formulated as follows:

1. Section 39–6–304(h), W.S.1977, Cum.Supp. 1982 provides:
    "(h) Any taxpayer paying the taxes imposed by this article on any valuable deposit may deduct the taxes paid from any amounts due or to become due to the interest owners of such valuable deposit in proportion to the interest ownership."

2. Article 15, § 3 of the Wyoming Constitution provides:

Does the record evidence the existence of a contract or agreement requiring the appellants to forward to the appellees their 5% overriding royalty without deduction for ad valorem and severance taxes?

We will answer this question in favor of the appellants because our review of the record fails to disclose any contract entered into between the parties or any contract structured by the conduct of the parties which would negate application of the rule announced in *Miller v. Buck Creek Oil Co.*, supra.

The district judge and the parties have recognized that the controlling precedent for the resolution of this appeal is our decision in *Miller v. Buck Creek Oil Co.*, supra. There, we were faced with a question involving the right of a lessee to deduct from royalty payments a proportionate amount of the mineral tax provided for by Art. 15, § 3 of the Wyoming Constitution.[2] The lease agreement provided that the lessors had retained a 12½% royalty on the net return of the sales of minerals extracted and that upon notice to the lessees the lessors could receive their royalty in kind. In resolving the dispute, we first held that the tax provided for was a tax levied on property rather than a "license, privilege, or occupation tax." *Miller v. Buck Creek Oil Co.*, supra, 269 P. at 44. We then concluded:

"It is perhaps doubtful whether the tax in question ought to be considered a tax upon the mining claim, or upon the oil produced therefrom. While it is based upon the value of the oil, it is declared to be in lieu of taxes on the mining claim. We are informed that it is the practice of the state board of equalization to assess

"All mines and mining claims from which gold, silver and other precious metals, soda, saline, coal, mineral oil or other valuable deposit, is or may be produced shall be taxed in addition to the surface improvements, and in lieu of taxes on the lands, on the gross product thereof, as may be prescribed by law; provided, that the product of all mines shall be taxed in proportion to the value thereof."

the entire tax against the operating and producing company. Royalty interests are not separately taxed. The propriety of the practice is not questioned. It has been followed in this case, and the entire tax has been assessed against, and paid by, the lessee. *The practical result is that the tax paid by the lessee is in lieu, not only of taxes on the mining claim, but also of taxes on the lessors' royalty interest. It would seem no more than just that, in the absence of contract, the tax ought ultimately to be borne by the parties in proportion to their respective interests in the production that is the basis of the tax.* If a mining lease provides that the lessor shall have as royalty a certain share (which might in some cases be a very large share) of the minerals taken from the land, it might well be considered, for the purpose, at least, of taxation, that the lessor was the owner of the oil which he received as royalty, and assumed that, in the absence of an agreement in regard to the payment of a property tax based on production, each party to the lease intended that he should be liable for the tax on his share of the production. See *Wolfe County v. Beckett*, 127 Ky. 252, 105 S.W. 447, 17 L.R.A. (N.S.) 688." (Emphasis added.) 269 P. at 44–45.

Applying the above rule, we held that under the language of the lease it was clear that the royalty in question referred to the lessors' property interest in the oil production upon which the tax was assessed, and as such the lessee could properly deduct the proportionate amount of the tax paid by him which was attributable to the royalty.

The rule announced in *Miller v. Buck Creek Oil Co.* was reaffirmed in *Oregon Basin Oil & Gas Co. v. Ohio Oil Co.,* 70 Wyo. 263, 248 P.2d 198 (1952). There we construed a lease which provided that the lessee was to pay all taxes assessed and levied on the lands while the lessor retained a 2½% royalty on all oil and gas " ' * * * found in and saved from said land, * * * ' " 248 P.2d at 199. In holding for the lessee, we concluded that the tax provided for by Art. 15, § 3 of the Wyoming Constitution (supra

n.2) was a tax on the gross product of minerals produced rather than a tax on the land, and as such it was a tax on personal property rather than real estate. 248 P.2d at 203. Applying the principles discussed, we concluded that the provision of the lease regarding the payment of taxes by the lessee was not applicable to an Art. 15, § 3 tax since that tax was levied on the gross product and not the land.

It can be concluded that the rule to be derived from *Miller v. Buck Creek* and *Oregon Basin Oil & Gas Co. v. Ohio Oil Co.* is that, with regard to taxes assessed on the gross products of a mine or well, both the lessee and lessor are responsible for payment in proportion to their ownership shares. Further, the rule will be applied unless the parties to the lease specifically provide as part of their agreement that some other arrangement for payment of taxes on the gross product has been agreed upon. This latter principle is underscored in the *Oregon Basin* case where, even though that lease provided for the payment of taxes by the lessee, the provision was held not to include the gross products tax since the parties had only agreed that the lessee's liability for payment of taxes extended to such taxes as were assessed against the land.

It is to be observed that the basic principles of the above two cases have been embodied by the legislature in the provisions of § 39–6–304(h), supra n.1, which permits the party paying the severance tax to deduct the same from any payments due or to become due to other owners of interests in the minerals for which the severance tax was assessed.

■ The principles of law previously discussed require that, as a condition precedent to the imposition of lessee's liability for payment of lessor's share of the production and severance tax, the record must disclose a contract or agreement between the appellee and the appellant to that effect.

In arguing that such an agreement exists, the Jaegers rely mostly upon the fact that

in the past Empire State Oil, the appellant Ashland's predecessor in interest, had always paid all of the ad valorem and severance taxes without charging the royalty owners for the same. In essence, their position is that the prior conduct of the owners of the lease is sufficient to evidence an agreement between the parties to pay the taxes in this way.

■ To this, Ashland responds by pointing out that there is no contract for tax payment in the record and that they are not bound by the conduct of their predecessor in interest (Empire State Oil) in the absence of an agreement. They also seem to urge that Paragraph No. 32 of the Unit Agreement, previously quoted in the facts, somehow changed their duty, if they have one, to pay the taxes at least as it relates to any production from the Phosphoria Unit Area.[3] We will answer this latter contention in summary fashion because, although appellants are correct in asserting that the paragraph is unambiguous, it appears from the language utilized that if a contract between the parties provides otherwise, then the provisions of paragraph 32 are not applicable. Thus, the language of the paragraph leads us directly back to the main issue between the parties—that being whether or not the record evidences a contract calling for the payment of the ad valorem and severance taxes by the lessee so that no deduction can be withheld for tax-paying purposes from the 5% overriding royalty payment. In other words, the language of the Unit Agreement in no way affects the main question which we will now address.

In arguing that a contract exists, the appellees point to the past conduct of Empire and Ashland and urge that the district court was correct in relying upon such conduct to construct the agreement entered into between the parties. We agree that a court, when resorting to contract interpretation is free to rely upon the parties' own conduct as evidence of their intent. *J. W. Denio Milling Co. v. Malin*, 25 Wyo. 143, 165

P. 1113, 1115 (1917). We recently noted this principle of interpretation in *Sunburst Exploration, Inc. v. Jensen*, Wyo., 635 P.2d 822, 825 (1981). However, we are only free to look to the conduct of the parties when resort to such extrinsic evidence is necessary to *interpret ambiguous contract provisions.* *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* Wyo., 612 P.2d 463 (1980). Another long-standing rule of which we are mindful concerns the proposition which holds that, in resolving a claim on a contract, we must confine our review to the language used and cannot rewrite or make a contract for the parties. *McCartney v. Malm*, Wyo., 627 P.2d 1014 (1981); *McGinnis v. General Petroleum Corporation*, Wyo., 385 P.2d 198 (1963).

In this case the district judge and the appellees erroneously relied on the conduct of the appellant Ashland and its predecessor, Empire State Oil, to structure a contract regarding appellants' duty to pay the taxes. We say this because the plain fact of the matter is that there is no contract in the record which evidences such an intent to which the parties are in privity. Further, appellees point to no law which would lead to a holding that conduct such as the parties have evidenced in this case will constitute such an agreement between the parties as will take the case out of the rule of *Miller v. Buck Creek Oil Co.* and § 39–6–304(h). The record only reveals various assignments between each of the parties' predecessors in interest which merely speak to the proposition that Cheyenne Lease 044141 is subject to a 5% overriding royalty interest. None of the documents mention taxes or provide which party to the original lease is liable therefor. In addition, although the various assignments note that each assignee takes subject to the various rights and liabilities attaching thereto, the original assignment executed between Polar Oil and Empire State Oil is not in the record. We can only assume that it also

---

3. As previously mentioned, the Phosphoria Unit Area includes only a portion of the production from Cheyenne Lease 044141.

makes no mention of taxes or who is liable for their payment. Or, to put it conversely, we have no right to assume that there *is* such a provision for the payment of taxes in the original assignment. The record is devoid of any contract which required resort to rules of interpretation and therefore the district judge erred in relying on the past conduct of Empire Oil to establish a contract requiring Ashland to pay the appellees' royalty free and clear of ad valorem and severance-tax deductions.

Before the conduct of the parties could be relied upon to interpret the provisions of a contract, it was incumbent upon the parties relying upon such agreement to produce it. It then became the obligation of the Jaegers to identify the provisions dealing with taxes which, due to an ambiguity, necessitated resort to rules of contract interpretation. This the appellees were unable to do because there is no such contract or ambiguous provision in the record.

We are, therefore, of the opinion that the rule announced in *Miller v. Buck Creek Oil Co.*, supra, is applicable because there is no contract between the parties requiring a contrary result.

We hold, therefore, that the appellants could and can continue to deduct ad valorem and severance taxes attributable to appellees' royalty from any payments due thereon. The summary judgment entered in the appellees' favor is hereby reversed and the case is remanded to the district court for entry of an order consistent with our decision herein.

ROONEY, Justice, dissenting.

I would affirm. Before indicating my basis for disagreement with the majority opinion, I first note wherein I agree with it. I agree that under Wyoming law, the oil becomes personal property upon severance. I agree that it is then subject to tax and that the levy is customarily made against the operator. I agree that *unless otherwise understood* between the parties, the lessor or assignee with reserved royalty rights is chargeable with his proportional share of the taxes. My consideration of this case begins with these propositions.

The result reached in the majority opinion is based on the conclusion therein recited that:

"* * * [A]lthough the various assignments note that each assignee takes subject to the various rights and liabilities attaching thereto, the original assignment executed between Polar Oil and Empire State Oil is not in the record. We can only assume that it also makes no mention of taxes or who is liable for their payment. * * *"

Although the assignment of the lease (the lease itself was between the United States and Polar Oil Company) referred to is not part of the record, the stipulation of facts by the parties recognizes the "overriding royalty" to be:

"* * * based on the *gross* production * * * originally reserved by Polar Oil Company * * * under Assignment of an Oil and Gas Lease * * * to Empire State Oil Company on June 29, 1918 * * *." (Emphasis added.)

There is no question but that the record reflects the existence of the lease assignment by Polar Oil Company (appellees' predecessor in interest) to Empire State Oil Company (appellants' predecessor in interest),[1] the fact that it reserved a 5% *overriding* royalty to Polar Oil Company, and the fact that the royalty was "based on the *gross* production." (Emphasis added.) It is also of record in this case that the parties and their predecessors in interest have acted pursuant to such assignment since 1918 with payment of the overriding royalty being made on the gross production, including payment of the taxes.

The majority opinion directs us to making an assumption that the pertinent assignment makes no mention of taxes or tax liability. There is no more reason to make such assumption than is there to make the contrary assumption. Most current lease

1. If the existence of such assignment is successfully contested, appellants, themselves, would have no rights whatsoever in the production.

forms do have specific provisions for payments of taxes.[2] But, assuming that such clause was not in the 1918 lease or in the assignment of it, the stipulated terms thereof are sufficiently indefinite and ambiguous with reference to tax obligations to make necessary a consideration of external aids to construction, such as the historical performance of the parties under the instrument.

The use of the term "overriding royalty" has a well-recognized meaning. We have said that it is:

"* * * as an interest in oil and gas production at the surface, free of the expense of production, and in addition to the usual land owner's royalty reserved to the lessor in an oil and gas lease. * * *" (Footnote omitted.) *Cities Service Oil Company v. Pubco Petroleum Corporation*, Wyo., 497 P.2d 1368, 1372 (1972).

"Gross" production under oil leases has the same meaning:

"There is a distinction between an overriding royalty and a 'carried interest,' which latter is a share in the *net* production, without any contribution to the drilling expense; whereas an overriding royalty is a share in the *gross* production." (Emphasis in original.) Glassmire, Law of Oil and Gas Leases and Royalties, 2nd ed. 1938, p. 241.

That being the case, inquiry must be made into the meaning attached to the word "gross" in the reservation of an *overriding* royalty on the gross production. Since the expenses of production are already eliminated in an overriding royalty, to what can the terms "gross" or "net" apply if not to subsequent charges against production, such as taxes, transportation costs, etc.? The use of the words "overriding royalty" plus the use of the word "gross" must mean payment of 5% of the production without *any* deduction. The word "gross" means

whole, entire, total, without deduction. *Allstate Insurance Company v. State Board of Equalization*, 169 Cal.App.2d 165, 336 P.2d 961 (1959); *Hartford Electric Light Co. v. McLaughlin*, 131 Conn. 1, 37 A.2d 361 (1944); *Cities Service Oil Co. v. Geolograph Co.*, 208 Okl. 179, 254 P.2d 775 (1953); *State v. Hallenberg-Wagner Motor Co.*, 341 Mo. 771, 108 S.W.2d 398 (1937). Thus, the plain meaning of the words of the assignment, as the parties have stipulated such words to be, supports the decision of the district court.

But should such words reflect an ambiguity or indefiniteness in the terms of the assignment, thus necessitating and making proper an effort to ascertain the intent of the parties, the conduct of the parties over a long span of years expresses the understanding that the taxes be paid by appellants.

The majority opinion gives reliance to the decision in *Miller v. Buck Creek Oil Co.*, 38 Wyo. 505, 269 P. 43 (1928), in reaching its result. The district court properly distinguished this case from *Miller v. Buck Creek Oil Co.* as follows:

"The Court feels that it is important to such issue that the lessee, Empire since 1949 and Ashland since 1972, the time of its acquisition and until 1975 paid all of the production and severance taxes for production from the lease. This conduct of the parties shows to the Court the practical construction placed on this issue. Even Ashland for three years followed in the footsteps of its predecessor and as lessee paid the Plaintiffs' taxes. This evidence coupled with the fact that the royalty assignment to Plaintiffs' predecessors in title does not involve taking oil in kind and the further fact that the royalty is based on gross clearly distinguishes this case from the *Miller vs. Buck*

2. E.g., the following is a typical clause from a federal lease form:

"* * * the lessee agrees:

    *    *    *    *    *    *

"(k) *Taxes and wages, freedom of purchase.* —To pay when due, all taxes lawfully assessed and levied under the laws of the State or the United States upon improvements, oil

and gas produced from the lands hereunder, or other rights, property or assets of the lessee; to accord all workmen and employees complete freedom of purchase, and to pay all wages due workmen and employees at least twice each month in the lawful money of the United States."

*Creek Oil Co.* case. This conduct of the original parties to the agreement followed by like conduct of their predecessors both before and after 1969 establishes an agreement as to who is responsible for the taxes and by reason of such renders section 39–6–304 W.S.1977 not applicable."

*Oregon Basin Oil & Gas Co. v. Ohio Oil Co.,* 70 Wyo. 263, 248 P.2d 198 (1952), also discussed in the majority opinion, concerned a provision in the lease by which lessee agreed "to pay all taxes assessed and levied on said lands." The question before the court was whether or not the gross production tax was a tax on real property or on personal property. It was held to be a tax on personal property, wherefore the provision requiring the lessee to pay the taxes "on said lands" would not apply. The case ·has no pertinency to this case in which the understanding was that payment of the overriding royalty was to be "based on the gross production"—be it real property or personal property.

Of interest in the *Oregon Basin Oil & Gas Co. v. Ohio Oil Co.* case, supra, is the fact that the tax was deducted by lessee from remittances to lessor as reflected on the accompanying statements for five or six years. We commented thereon as follows at pages 205–206 of 248 P.2d:

"The acceptance of these statements over a long period of time, when no controversy existed between appellant and respondent seems to us to amount to an admission or an acquiescence in the proposition that the tax was properly deductible. Sometimes 'actions speak louder than words.' As stated by this court in *J. W. Denio Milling Co. v. Malin,* 25 Wyo. 143, 165 P. 1113, 1115;

" 'It is to be assumed that the parties to a contract know best what was meant by its terms, and are the least liable to be mistaken as to its intention; that each party is alert to protect his own interests and to insist on his rights; and that whatever is done by the parties during the period of the performance of the contract is done under its terms as they understood and

intended it should be. Parties are far less liable to have been mistaken as to the meaning of their contract during the period while harmonious and practical construction reflects that intention, than they are when subsequent differences have impelled them to resort to law, and one of them then seeks a construction at variance with the practical construction they have placed upon it of what was intended by its provisions.' 6 R.C.L., p. 853.

"See *Rohrbaugh v. Mokler,* 26 Wyo. 514, 188 P. 448; *First National Bank v. Ennis,* 44 Wyo. 497, 14 P.2d 201; *Wyoming Abstract & Title Co. v. Wallick,* 64 Wyo. 458–464, 196 P.2d 384; *Holliday v. Templin,* 56 Wyo. 94, 103 P.2d 408."

In this case, the taxes were not deducted over a much longer period of time. The same logic should be applicable.

In summary, I start with the recognition that the word "royalty" means a share of the proceed or profit reserved by the owner of land for permitting another to develop the land for oil or gas. *Watkins v. Slaughter,* Tex.Civ.App., 183 S.W.2d 474 (1974), aff'd 144 Tex. 179, 189 S.W.2d 699 (1945); *Robinson v. Milam,* 125 W.Va. 218, 24 S.E.2d 236 (1942). The lessee agrees to deliver the oil to the royalty holder in the pipeline to which lessee converts his wells. Lessee's purchaser buys lessor's oil at the "posted price" pursuant to a division order from lessor (royalty holder). If the lease provides for payment of the royalty "in kind" and the lessor exercises the privilege of taking the oil in kind, the lessee must deliver the oil to lessor rather than into the pipeline used by lessee. · Usually lessor is obligated to furnish the tanks or pipelines necessary to receive such oil. An overriding royalty is a royalty interest free of expense of production. In this case, regardless of any reference to taxes which may have been in the first assignment of the lease, the parties stipulated that it provided for an overriding royalty on the gross production. The words "overriding" and "gross" each provide for the same result. One of the words is redundant unless one of

them is taken to provide for payment without *additional* deductions. That this was intended is fortified by the harmonious and practical construction given to the contract over many years in which lessee paid the taxes.